UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK FOWLER,

v.                                    Case No.    8:06-cr-186-T-17MAP
                                                  8:11-cv-379-T-17MAP

UNITED STATES OF AMERICA.
_____/

## ORDER

This cause is before the Court on Mark Fowler's timely-filed 28 U.S.C. §2255 motion
to vacate, set aside, or correct an allegedly illegal sentence (hereinafter "motion to vacate"
or "motion"). (Doc. cv-1; cr-162).  A review of the record demonstrates that the motion to
vacate must be **denied.**

## PROCEDURAL HISTORY

A federal grand jury in Tampa, Florida, returned an indictment charging defendant
Mark Fowler with two counts of possession of firearms as a convicted felon, in violation of
18 U.S.C. §§ 922(g)(1) and 924(e). D-9.[1] Fowler proceeded to trial, and a jury found him
guilty on both counts. D-99. This Court sentenced Fowler to 240 months incarceration (120
months on each count, to run consecutively), to be followed by three years supervised
release. D-150 at 32-33. Although the indictment charged Fowler pursuant to the Armed
Career Criminal Act, 18 U.S.C. § 924(e), this Court did not sentence him pursuant to that
statute.

Fowler directly appealed his conviction, D-144, and the Eleventh Circuit considered

---

[1] Although the indictment charged Fowler pursuant to the Armed Career Criminal
Act, 18 U.S.c. § 924(e), this Court did not sentence him pursuant to that statute.

the following issues in affirming his sentence:

> 1. This Court did not plainly err and violate the ex post Facto clause by determining Fowler's advisory sentencing Guidelines level pursuant to the 2007 version of the sentencing Guidelines;

> 2. This Court did not plainly err by grouping Fowler's two counts of conviction before determining Fowler's total offense level; and

> 3. Fowler's 240-month sentence is substantively reasonable.

*United States v. Fowler*, 342 Fed. App'x 520 (11th Cir. 2009). Fowler's petition for certiorari was denied by the Supreme Court. *Fowler v. United States*, 130 S. Ct. 2371 (2010).

On February 23, 2011, Fowler timely filed a motion and memorandum pursuant to 28 U.S.C. § 2255. D-cv-1, D-cv-2. In his motion, Fowler raises a number of grounds for relief, alleging violations of his Fifth and Sixth Amendment rights occurring during his criminal prosecution and on appeal. Id. As a result, Fowler claims he is entitled to a "new-trial or a reasonable plea agreement." D-cv-2 at 16.

## FACTUAL BACKGROUND

On July 22, 2003, Samuel James Dunbar was shot and killed on Olive Street in Lakeland, Florida. Presentence Investigation Report ("PSR") ¶ 8, D-9 at 1-2. He died of a single shot to the forehead. PSR ¶ 8. Medical examiners determined that the shot had been fired from at least three to three-and-a-half feet away. PSR ¶ 8. Several witnesses gave information regarding the shooting and leading to Fowler as the possible shooter. PSR ¶ 8.

Detectives found Fowler at his home a short distance away. PSR ¶ 9. During a search of the home, detectives found a ski mask, a .38 caliber handgun, a holster, and a plastic bag containing bullets in the attic. PSR ¶ 9. Fowler admitted hiding those items in

his attic. PSR ¶ 10. Forensics tests confirmed that the .38 caliber handgun had been used to shoot Dunbar. PSR ¶ 9. Detectives also found a 9mm Interarms Brigadier semi-automatic pistol, a variety of ammunition, and a t-shirt bearing Dunbar's blood inside a cardboard box on top of the washing machine. PSR ¶ 9.

Fowler claimed he had shot Dunbar in self defense. PSR ¶ 10. He said he and Dunbar had been involved in a drug transaction when Dunbar had pulled out a gun. PSR ¶ 10. He claimed that the ski mask, gun, holster, and bag of bullets all had belonged to Dunbar and that, when Dunbar had been distracted, Fowler had knocked the gun out of Dunbar's hand, recovered the gun, and pulled it through the ski mask hole. PSR ¶ 10. He said that, when Dunbar had charged at him, he had shot Dunbar in the forehead and then had recovered all of the items before fleeing to his home, where he had hidden the items in his attic. PSR ¶ 10.

Fowler was charged in state court with the murder of Dunbar, and a jury found him guilty of second degree murder. PSR ¶ 11. The state court judge sentenced him to serve 25 years incarceration, but the Florida Second District Court of Appeal reversed the conviction, holding that Fowler had presented a prima facie case of self defense and that the State had not carried its burden of rebutting that defense and proving Fowler's guilt beyond a reasonable doubt. PSR ¶ 11; *see Fowler v. State*, 921 So.2d 708 (Fla. 2d DCA. 2006). On March 13, 2006, the State dismissed its case against Fowler. PSR ¶ 11.

In preparation for sentencing in this case, the United States Probation Officer prepared the PSR using the United States Sentencing Commission Guidelines Manual effective November 1, 2007. PSR ¶19. Fowler did not object to the use of that guidelines manual in the determination of his advisory guidelines range. See PSR Addendum. The

probation office also stated that Fowler's two counts of conviction should be grouped pursuant to USSG §§3D1.1- 3D1.5 to determine Fowler's guideline's offense level. PSR ¶20. Fowler did not object to the grouping of the two counts. See PSR Addendum.

The probation office stated Fowler had used a firearm in connection with the death of another person so, pursuant to USSG §2K2.1(c)(2), the probation office used the most analogous guideline, USSG §2A1.2 (applicable to Second Degree Murder) to determine Fowler's base offense level. PSR ¶¶ 22, 23. Pursuant to §2A1.2, Fowler had a base offense level of 38 because he had been charged in state court with first degree murder and convicted of second degree murder, and the United States could prove by a preponderance of the evidence that he had committed second degree murder. PSR ¶ 23. Fowler had a total offense level of 38. PSR ¶ 30. Fowler's extensive criminal history resulted in a criminal history score of 8, noting that he had committed the offenses in this case which he was on probation for another offense, adding another two points to his criminal history score pursuant to USSG §4A1.2(d), and noting that the had committed the offenses in this case less than two years following his release from custody for other offenses, adding another criminal history point pursuant to USSG §4A1.1(e). PSR ¶¶ 38, 39. Therefore, Fowler had a criminal history score of 11 and a criminal history category of V. PSR ¶ 40. Although a guidelines score of 38 and a criminal history category of V placed Fowler within a guidelines range of imprisonment of 360 months to life, 18 U.S.C. § 924(a)(2) limited his maximum sentence to 120 months imprisonment on each count, so his guidelines range of imprisonment became 120 months imprisonment on each count pursuant to USSG §5G1.2(d). PSR ¶¶ 77, 78.

Fowler objected to the probation office's determination of his offense level, asserting

that this Court should not use the guideline applicable to second degree murder because his state court murder conviction had been reversed on appeal and the evidence at trial had proven only that Fowler had used a gun in connection with involuntary manslaughter, not second degree murder. D-150 at 6-7. He argued, therefore, that this Court should determine that he had a base offense level of 18 pursuant to USSG §2A1.4, rather than 38 pursuant to §2A1.2. D-150 at 7.

In response, the United States asserted that the evidence at trial had shown that Fowler had gone to meet Dunbar with the intent to kill him. D-150 at 8. Although Fowler had claimed that Dunbar had pulled a gun on him and he then had grabbed the gun away and shot Dunbar in self-defense, the United States pointed out to this Court that the blood pattern analysis expert had testified that Dunbar had been shot "right smack in the forehead," refuting Fowler's claim. D-150 at 8. Furthermore, although Fowler had claimed that he had never met Dunbar, a neighbor testified that she had previously seen Fowler and Dunbar speaking to each other in Fowler's yard. D-150 at 8-9. The United States argued further that the evidence had shown that the second gun (the Interarms 9mm) had been found on top of the bloody shirt Fowler had been wearing at the time he had shot Dunbar, both of which had been hidden beneath something else. D-150 at 9. This Court stated that it recalled the evidence presented at trial. D-150 at 9. Fowler persisted, stating that he was making an "*Apprendi* type argument that [his] client wasn't charged with murder and so that issue is not before the jury." D-150 at 10. He argued that Fowler was being punished for something he had not been charged with. D-150 at 10.

This Court ruled:

During this trial the government proved in this Court's opinion by a

preponderance of the evidence that the defendant committed the offense of second degree murder, and unless for record purposes we need to put anything else on the record, for any appeal in this case, the Court is satisfied with the statement I have just made.

D-150 at 12. This Court adopted all of the undisputed factual statements and guideline applications contained in the PSR and determined that Fowler had a total guidelines offense level of 38, with a criminal history category of V. D-150 at 13. After much discussion of Fowler's extensive criminal history, D-150 at 29-32, this Court sentenced Fowler to serve 240 months imprisonment (the statutory maximum of 120 months on each count, with the terms to run consecutively), to be followed by three years supervised release, D-150 at 32-33. This Court found that the sentence imposed was sufficient but not greater than necessary to comply with the statutory purposes of sentencing. D-150 at 36.

## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d

1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second- guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

*Strickland*'s two-pronged review requires a petitioner to show both deficient representation and prejudice in claims involving ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009), *cert. denied*, 130 S.

Ct. 1884 (2010). To meet his burden, a petitioner must show that appellate counsel's performance was deficient and but for counsel's failure to present the omitted issues, petitioner would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 286 (2000); accord Jones v. United States, 357 Fed. App'x 253 (11th Cir. 2009) (citation omitted). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004).

The Smith Court observed that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). A defendant's counsel is not ineffective for failing to raise claims "reasonably considered to be without merit[.]" *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). An effective appellate attorney is not required to raise every non-frivolous issue. Indeed, it is an effective strategy to "winnow out" weaker arguments even though they may have some merit. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones*, 463 U.S. at 751.

**MERITS**

In Ground Six, Fowler contends his trial counsel[2] was constitutionally ineffective for failing to challenge his indictment on various grounds and for failing to call a witness at trial. D-cv-1 at 12, D-cv-2 at 28-32. In Grounds 1-5 and 7, Fowler alleges that appellate counsel ignored his specific instructions as to which issues to brief and argue on direct appeal. D-cv-1 at 4, 6, 8, 10, 14, D-cv-2 at 33-37. Fowler argues further that he based on several of

---

[2] Although Fowler specifically cites to Ms. Mills' conduct (D-cv-2 at 28), the trial record reflects that Fowler had the assistance of three public defenders at trial (D-125 at 4).

his post-trial motions, he "made [appellate counsel] fully aware that he wanted [ ] counsel to pursue these claims on appeal." D-cv-2 at 36. Throughout his motion, Fowler claims his trial and appellate counsel were constitutionally ineffective for failing to challenge various perceived trial, sentencing, and appellate errors. Fowler's allegations are baseless because he misapprehends the law as applied to the facts of his case. As support for some of his grounds, Fowler provides this Court with a letter he sent appellate counsel, five weeks after counsel had transmitted his brief, listing four issues Fowler wished to raise in a supplemental brief.[3] D-cv-2 at 66-69. In that June 2, 2009 letter, Fowler references a prior visit from counsel at the jail and prior phone conversations and requests counsel to contact the appellate clerk's office to send Fowler "Pro-se Supplemental Brief forms." Id. at 67.

Fowler does not document any further attempts to contact appellate counsel or the Eleventh Circuit with his concerns nor does he explain his lack of attentiveness. The Eleventh Circuit docket sheet (Exhibit D TO Doc. 10) and this Court's docket sheet do not reflect Fowler petitioning either Court to appoint him another appellate counsel nor does it indicate Fowler sought permission to file a pro se supplemental brief. The appellate docket sheet does reflect that counsel amply represented Fowler's interests on appeal by timely filing an initial and a reply brief and by pursuing further review before the Supreme Court. Fowler's assertion that he had four other issues he wished to raise on appeal does not constitute prejudice under *Strickland* because Fowler does not conclusively show that even if such issues had been raised, the Eleventh Circuit would have reversed his

---

[3] Fowler also attaches counsel's April 28, 2009, transmittal brief letter at D-cv-2 at 65 inviting Fowler to contact counsel if he had any questions and advising Fowler that a reply brief was being prepared.

conviction and sentence. Fowler's primary assertion that both counsel should have raised a number of other arguments and objections based on Fowler's belief that his federal prosecution for firearms possession following a state prosecution for second degree murder constitutes double jeopardy, simply fails to show substantial prejudice or any flaw in the proceedings because the two crimes have separate elements and the evidence presented at his federal trial supports his convictions and sentence. Therefore, Fowler's counsel were not ineffective under *Strickland* for failing to challenge the counts of conviction or sentence on the bases he suggests. *Strickland*, 466 U.S. at 694. Fowler has failed to show that counsels' performance was below an objective standard of reasonable professional assistance. *Id.*

As demonstrated below, all of Fowler's claims lack merit and his arguments do not support a different result at trial, at sentencing, or on appeal. As such, there is no evidence to support Fowler's claims that his trial and appellate counsels' assistance was deficient or that Fowler was in any way prejudiced.

**Claims of Ineffectiveness Concerning Trial Counsel (Ground 6)**

Fowler initially claims trial counsel was constitutionally ineffective for failing to file a demurrer and "challenge the legality of count one of the indictment." D-cv-2 at 28-30. Fowler cites *United States v. Mason*, 213 U.S. 115 (1909), in support of his argument that his counsel should have moved for a "demurrer" to bar the introduction of his "state acquitted conduct." Id. at 29. He is wrong. *Mason* is "neither a double jeopardy nor a collateral estoppel holding." *United States v. Frumento*, 563 F.2d 1083, 1087 (3d Cir. 1977). The "dual sovereignty doctrine" permits both the state and federal governments to

prosecute a defendant for the same conduct without running afoul of the Double Jeopardy Clause or the Due Process Clause of the Fifth Amendment.

In *United States v. Lanza*, 260 U.S. 377 (1922), the United States Supreme Court explained the doctrine, stating, "[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." *Id.* at 382; *accord Bartkus v. Illinois*, 359 U.S. 121 (1959); *Abbate v. United States*, 359 U.S. 187 (1959); *United States v. Perchitti*, 955 F.2d 674 (11th Cir. 1992). Therefore, Fowler is mistaken that his counsel should have moved to exclude evidence based on *Mason* as it would not have entitled to any relief on double jeopardy grounds.

Next, Fowler claims trial counsel "fail[ed] to present exculpatory evidence" by calling Calvin Standifer as support of his self-defense claim. D-cv-2 at 30-31. Fowler relies on the state court opinion reversing his conviction as proof this strategy would have been successful at trial. Id. Fowler's claim is wholly without merit. Standifer's previous testimony was unpersuasive to the state court jury and nothing Fowler says today substantiates his claim that a federal jury would have given it greater importance as to his self-avowed theory of self-defense because Standifer did not witness the actual shooting and had no knowledge of the two firearms and ammunition located at the residence. *See Fowler*, 921 So.2d at 709, 712-13. Nor does Fowler address how the federal jury rejected his wife's testimony as to Fowler's lack of knowledge about the second firearm. Nor does Fowler explain how Standifer's testimony would have had any impact on the ballistic expert's testimony linking ammunition found in the residence bedroom to the .38 caliber Smith and Wesson revolver (the murder weapon), or how any Standifer's testimony would have impeached blood pattern analysis expert witness N. Leroy Parker's testimony that he was

unaware of any test that could be done on the shirt to determine whether someone had acted in self-defense. D-126 at 240-44, D-127 at 124.

The decision not to call a witness is the epitome of a strategic decision and one that an appellate court "will seldom, if ever, second guess." *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004) (citation omitted). Fowler fails to adequately explain how Standifer's testimony would have changed the results of his trial other than suggest the Florida appellate court gave Fowler's justification defense more credibility than did the state's jurors. Standifer's testimony would not have supported a conclusion that Fowler did not possess the weapons at his home. At best, Standifer could verify he saw two men and one fall after hearing a gunshot–certainly not enough to obtain an acquittal.

In his third ground, Fowler claims trial counsel was constitutionally ineffective for failing to "challenge the legality of count one of the indictment" as multiplicitous based on *Blockburger v. United States*, 284 U.S. 299 (1932). D-cv-2 at 28-32. Fowler makes a similar claim against appellate counsel in Grounds 5 and 7. D-cv-1 at 10, D-cv-2 at 25-27, 33-35, (Issue 2). These claims also fail. No double jeopardy violation exists where Fowler's convictions for two separate counts of unlawfully possessing firearms after having been convicted of a felony were based on Fowler's possession of two separate firearms at different times and locations. At trial, Fowler's possession of the .38 caliber Smith and Wesson revolver was recounted by various witnesses in describing the events of July 22, 2003 where Fowler shot Dunbar and later took the .38 caliber revolver back to his home and secreted it in the attic. D-125 at 270-78, 282-83, 289-305, 326-28, D-126 at 42-68, 79-84, 90-107, 110-16. The ballistics expert's testimony showed spent shell casings from the .38 were present in a bedroom. D-126 at 240-44. A credible inference from this testimony

is that the .38 caliber Smith and Wesson revolver had been fired at Fowler's residence at another point in time.

During the search for the .38 caliber Smith and Wesson revolver, another firearm, a 9mm Interarms Brigadier, was found along with Fowler's shirt splattered with Dunbar's blood in a box near the back door. D-126 at 111-16. All of this testimony and evidence is sufficient to show that Fowler possessed the firearms at different times and places. Where a defendant possesses different weapons at different times or places, the government may treat them as separate units of prosecution and charge multiple counts. *United States v. Bonavia,* 927 F.2d 565, 568-69 (11th Cir. 1991). Fowler's indictment is not multiplicitous for charging the offenses in this manner. *United States v. Jones*, 601 F.3d 1247, 1258 (11th Cir. 2010) (citing Bonavia, 927 F.2d at 568-69). Nor would trial counsel have been successful in raising a pretrial challenge to the indictment on the basis Fowler suggests.

Similarly, Fowler's reasoning that appellate counsel could have successfully raised a multiplicity challenge based on a grouping or reasonableness argument is also without merit. The Eleventh Circuit reviewed Fowler's sentence on several grounds, including a grouping challenge based on USSG §3D1.1, adding an inapplicable multiplicity argument would not have been successful in attaining resentencing. As the Eleventh Circuit held, Fowler's sentence was reasonable and his "arguments concerning the nature of his offense" were not persuasive. *Fowler*, 342 Fed. App'x at 525.

Lastly, Fowler alleges his counsel was constitutionally ineffective for "fail[ing] to raise the Petite policy in a timely manner" as a "pretrial motion." D-cv-2 at 32. Fowler's complaint appears to be the same double jeopardy claim he makes throughout this motion, his assertion that his State court conviction had been overturned and counsel should have

"research[ed] case law" or done other "trial preparation" to challenge his federal prosecution. However, there is no legal-based objection based on a "Petite policy violation" that counsel could have made that would have changed the outcome of Fowler's conviction.[4] There is no double jeopardy issue when the United States charges a crime previously litigated in a State court. *United States v. Beard*, 41 F.3d 1486, 1489 (11th Cir. 1995) (refusing to dismiss prosecution based on asserted violation of Justice Department's so-called "Petite policy" of refraining from multiple state and federal prosecutions for the same conduct). There is an abundance of case law authority that have held that the United States Constitution does not bar successive state and federal prosecutions based on the same conduct. *See, e.g., Rinaldi v. United States*, 434 U.S. 22, 28-29 (1977); *Bartkus v. Illinois*, 359 U.S. 121 (1959); *Abbate v. United States*, 359 U.S. 187 (1959). Counsel's failure to file such a motion does not demonstrate prejudice under Strickland. In summary, Fowler has not demonstrated that his trial counsel was constitutionally ineffective because the claims he makes lack merit.

## Sham Prosecution/Double Jeopardy Claims (Ground 1)

Fowler complains his appellate counsel was constitutionally ineffective for failing to raise a double jeopardy claim based on the supposed "sham prosecution" exception to the dual sovereignty doctrine. D-cv-1 at 4, D-cv-2 at 8-12. Fowler contends that "his indictment

---

[4] The United States' policy in this regard is referred to as the Petite policy and takes its name from *Petite v. United States*, 361 U.S. 529 (1960). This policy is strictly internal, is not constitutionally mandated, nor is it enforceable against the government, and it does not confer substantive rights on criminal defendants. *United States v. Jackson*, 327 F.3d 273 (4th Cir. 2003); *United States v. Gary*, 74 F.3d 304 (1st Cir. 1996); *United States v. Simpkins*, 953 F.2d 443 (8th Cir. 1992); *United States v. Mitchell*, 778 F.2d 1271 (7th Cir. 1985).

for possession of a firearm by a convicted felon, after acquittal for his state [ ] prosecution for murder violate[s] the Double Jeopardy Clause" because it amounted to a "sham" prosecution and "the Federal Government was only a tool by the state in re[-]prosecuting him for the identical conduct . . . later reversed by the State Court of Appeals." D-cv-2 at 8-10. Fowler's appellate counsel was not constitutionally ineffective for deciding against raising an argument then foreclosed by the firmly established dual sovereignty doctrine which would have defeated Fowler's double jeopardy claim he raised generally as a guidelines objection to his relevant conduct at sentencing (PSR Addendum at ¶¶ 3-4, D-150 at 6-7, 10, 12). D-cv-2 at 8-12, 67-68 (Issue 2)).

When Fowler raised this same argument in his pro se new trial motion, this Court appointed new counsel to review the trial transcripts and make any additional argument, the government responded, and this Court did not find Fowler's double jeopardy arguments persuasive. D-109, D-132, D-134, D-135. This Court held that the prosecution of this case is protected by the dual sovereignty doctrine, not double jeopardy. D-134, D-135. This Court followed well-settled Supreme Court and Eleventh Circuit authority that successive prosecutions by the state and federal sovereigns does not result in double jeopardy if they arise from the same conduct. Fowler also fails to meet his high burden of showing that the federal government controlled, dominated or manipulated his state prosecution. Fowler's claim is without merit.

First, there is no sham prosecution exception, as neither the Eleventh Circuit nor the United States Supreme Court has ever dismissed an indictment on that basis or even held that such an exception exists. "The Supreme Court has repeatedly held that successive prosecutions based on the same conduct are permissible if brought by separate

sovereigns." *Perchitti,* 955 F.2d at 676 n.4 (citations omitted). Every sovereign has the inherent power to determine what shall be an offense against its authority and to punish such offenses. *United States v. Wheeler*, 435 U.S. 313, 320 (1978). "The basis for [the dual sovereignty] doctrine is that prosecutions under the laws of separate sovereigns do not" violate the Fifth Amendment. *Id.* at 317.

In *Bartkus v. Illinois*, 359 U.S. 121 (1959), the Supreme Court held that the Constitution does not bar a state from prosecuting a defendant for a crime after the defendant has been acquitted of a federal charge based on the same conduct. The Court also stated the following: "[The record] does not support the claim that the State of Illinois in bringing its prosecution was merely a tool of the federal authorities, who thereby avoided the prohibition of the Fifth Amendment against a retrial of a federal prosecution after an acquittal. It does not sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution." 359 U.S. at 123-24.

In this case, Fowler initially was charged with, and convicted by a jury, of second degree murder in state court in Polk County, Florida, partially based upon the acts and events which gave rise to the federal charges in this case.[5] However, Fowler was also federally charged with an additional felon in possession of a firearm count based upon the second firearm (9mm Interarms Brigadier) which was located in his residence. This firearm was not the subject matter of a state prosecution. "In its discussion of dual sovereignty, the

---

[5] The Florida District Court of Appeals reversed Fowler's conviction finding that the State had not adequately rebutted his claim of self defense, even though Fowler testified as to this claim, was cross-examined as to the credibility of his claim, and a jury found the claim so completely lacking in credibility they convicted him of second degree murder.

*Heath* Court made reference to cases upholding federal and state prosecutions for the same offenses, noting that "the Court has uniformly held that the states are separate sovereigns with respect to the federal government because each state's power to prosecute is derived from its own 'inherent sovereignty,' not from the federal government." *United States v. Sanchez*, 992 F.2d 1143, 1149-50 (11th Cir. 1993) (citing *Heath v. Alabama*, 474 U.S. 82, 89 (1985)). Fowler's federal prosecution for a separate charge with separate elements than his former state charges did not violate his Fifth Amendment rights.

The Supreme Court never has revisited the *Bartkus* "sham prosecution" exception to the dual sovereignty doctrine. *Cf. United States v. Balsys*, 524 U.S. 666,698-99 (1998) (suggesting that a party conceivably could assert the Fifth Amendment right against self-incrimination in a United States proceeding if the party fears a prosecution in a foreign country "as much on behalf of the United States as of the prosecuting nation"). The Eleventh Circuit likewise has not decided whether the sham prosecution exception exists. *See United States v. 817 N.E. 29th Drive*, 175 F.3d 1304, 1311 n.13 (11th Cir. 1999) (noting that this Court "repeatedly [has] refused to decide whether such an exception actually exists"). As recent as April 2010, the Eleventh Circuit, albeit in an unpublished opinion, refused to decide whether such an exception exists. *United States v. Gholikhan*, 370 Fed. App'x 987 (11th Cir. 2010), *cert. denied*, 131 S. Ct. 1537 (2011). *See also, United States v. Arias*, No. 1:05-cr-197-1TWT, 2007 WL 2422034 (N.D. Ga. 2007) (where the district court stated that the Eleventh Circuit has yet to recognize the sham prosecution exception.) Other courts have questioned whether *Bartkus* meant to create such an exception. *See, e.g., United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir. 1993); *United States v. Patterson*, 809 F.2d 244, 247 n.2 (5th Cir. 1987). Although some courts

of appeals may have inferred from Bartkus a "sham prosecution" exception, no court of appeals has ever upheld the dismissal of an indictment on that ground and Fowler cites to no controlling authority to support his view that the facts of his case amount to a sham prosecution.

Even if this Court addresses the merits of Fowler's asserted "sham prosecution" exception, Fowler is not entitled to relief. If such an exception existed, it would "require[] a showing that one sovereign controlled, dominated or manipulated the prosecution of the defendant by the other." *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1362 (11th Cir. 1994) (emphasis in original). One sovereign must "thoroughly dominate[] or manipulate[] the prosecutorial machinery of another," *United States v. Guzman*, 85 F.3d 823, 827 (1st Cir. 1996), such that the other sovereign's prosecutors were "mere puppets, manipulated by the United States," *Baptista-Rodriguez*, 17 F.3d at 1362; *accord United States v. Raymer*, 941 F.2d 1031, 1037 (10th Cir. 1991) (defendant has substantial burden of showing that "one sovereign is so dominated by the actions of the other that the former is not acting of its own volition"). Understandably, such an exception is narrow and difficult to prove. *See id.; United States v. Rashed,* 234 F.3d 1280, 1282 (D.C. Cir. 2000) (collecting cases). The defendant must do more than allege that law enforcement authorities controlled the investigation. *Id.* at 1362. Fowler presents no fact to infer that the state prosecution was controlled, manipulated, or directed by the United States. There is no evidence to suggest that the United States pulled the strings in the state prosecution so as to render the state a puppet of the United States.

Rather than suggesting a sham prosecution, cooperation between investigating sovereigns is "undeniably legal and, in fact, a welcome innovation in law enforcement

techniques." *Brocksmith*, 991 F.2d at 1366-67; *see Bartkus*, 359 U.S. at 123 (conventional practice of federal and state cooperation does not support claim that state prosecution was "merely a tool" of the federal authorities). Furthermore, none of the alleged facts concerning the investigation even suggests that the United States controlled the Florida prosecution, which is the critical concern here. In sum, there is no double jeopardy violation as this case is governed by the dual sovereignity doctrine. Even if a "sham prosecution" exception did exist, Fowler's motion and supporting documentation are insufficient to require relief as the proof Fowler offers is trial testimony ATF Special Agent Lanier who knew of Fowler's prior prosecution but had "no official involvement." D-cv-2 at 11. Fowler fails to allege facts which conclusively demonstrate that the prior state prosecution was a sham proceeding orchestrated by the federal government. Therefore, there is clearly an insufficient basis in the record for this Court to conclude that the dual sovereignty doctrine should not apply here. Fowler fails to show how raising this ground on appeal would have been a successful basis to reverse his conviction.

## Plea Offer Claim (Ground 2)

Fowler argues that the government's plea offer was "unreasonable" because he was willing to "accept responsibility for the possession of a firearm by a convicted felon, without the enhancement for the acquitted conduct of murder" but the government's "plea deal for a fourteen-year sentence" "would not be enough to prevent the government" from enhancing his sentence with the acquitted conduct. D-cv-2 at 14. Fowler cites to his statements to this Court at sentencing as proof of his willingness to accept a ten-year sentence. Id. at 15. Fowler's plea offer argument is not credible because he is in essence asking for a plea agreement that would guarantee a certain sentence. The government is

under no obligation to extend plea offers as there is no constitutional right to a plea bargain. *Mabry v. Johnson*, 467 U.S. 504 (1984). Even if the plea agreement had made with such a sentencing recommendation,[6] Fowler's subsequent plea colloquy would have clearly established that Fowler could not rely on any attorney's prediction of his sentence as a guarantee because this Court had the sole discretion to impose a sentence up to the statutory maximum of ten years as to each count and would fashion a sentence after the review of a presentence report and the advisory guidelines. *United States v. Booker,* 543 U.S. 220, 245 (2005).

In any event, Fowler made a similar request for leniency and a ten-year sentence before this Court and this Court rejected his arguments. Fowler's joinder of this claim, without any further proof or argument, with his unsupported contention that his appellate counsel was constitutionally ineffective for failing to raise this claim on direct appeal is similarly unpersuasive. Fowler cannot meet the *Strickland* test because his claim lacks merit.

Moreover, because Fowler fails to explain or argue his ineffective assistance of counsel claim other than generally claiming that the issue should have been raised on direct appeal, this claim fails. The plea offer extended to Fowler contemplated his pleading guilty to both Counts One and Two, each of which carried a maximum term of

---

[6] There is nothing in the record to indicate that the government would have agreed to such a plea agreement and the government maintains it did not contemplate such an offer. Fowler's allegation is thus conclusory and conclusively contradicted by the record. Fowler cannot show that appellate counsel was ineffective for raising an issue about a plea offer that fails to exist. Nor can Fowler fault trial counsel "because counsel cannot be found ineffective for 'failing to negotiate a plea agreement that was not available.' " *Lopez v. Jenkins*, No. 08cv457-LAB(AJB), 2009 WL 4895274, at *19 (S.D. Cal. 2009) (quoting *Smith v. United States*, No. 3:05cv568, 2008 WL 2388122, at *3 (E.D. Tenn. 2008)).

imprisonment of ten years. PSR ¶ 76, D-cv-2 at 51. The agreement included the recommendation of a fourteen year sentence to this Court but noted the recommendation "is not binding on the Court." D-cv-2 at 52. Instead, Fowler now suggests a ten year plea offer would have been "reasonable" given his own calculations of the guidelines. Id. at 15. It is not enough for Fowler to say that he would have accepted an offer that guaranteed him a ten-year sentence. Instead, he must bolster that assertion with objective evidence showing a reasonable probability that he would have accepted the plea offer that was actually on the table.

Fowler has not presented any objective evidence to substantiate his claim that he wanted to accept a plea offer. *See e.g., Paters v. United States*, 159 F.3d 1043, 1046-47 (7th Cir. 1998) (to show prejudice from counsel's deficient performance in plea negotiation process, petitioner must show through objective evidence, not the effect of the alleged error on the sentence, but that there was a reasonable probability that, but for counsel's inadequate performance, he would have accepted the offer); *see also Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)(finding awareness of plea offer and after-the-fact testimony concerning desire to plead is insufficient evidence). Fowler's claim boils down to his desire for a lower sentence.

Not only did Fowler reject a reasonable plea offer, he now seeks to minimize his own conduct by belatedly claiming he would have entered a plea with a guarantee of a lesser sentence. Fowler was fully aware of the plea offer the government extended, an offer fully informing him of the nature of the charges and potential sentences, and he rejected the offer, choosing to proceed to trial. Such circumstances do not constitute ineffective assistance of counsel regarding a plea offer. *See Diaz*, 930 F.2d at 834-35. An attorney's

responsibility is to advise his client but the ultimate decision of whether or not to plead guilty lies with the defendant. "It is important to remember that while defense counsel serves as an advocate for the client, it is the client who is the master of his or her own defense." *United States v. Teague*, 953 F.2d 1525 (11th Cir. 1992) (citation omitted). Fowler's decision to go to trial, tell an improbable version of events, and take his chances with the jury, in hindsight would prove to be ill-advised.

Seeking to recoup his loss at sentencing, Fowler, in arguing the applicability of the reasonableness factors of his sentence under 18 U.S.C. § 3553(a), took a position that ten years would be a reasonable sentence. D-150 at 19. This Court rejected his recommendation. This Court, in reviewing, all of Fowler's downward departure arguments found them unpersuasive. Instead, this Court cited Fowler's extensive criminal history and his disregard for American laws (Fowler was born in Jamaica and is illegally in the United States) as reasons mandating his 240 months imprisonment. D-150 at 29-33. Fowler has not made a showing entitling him to any relief and this ground is meritless. Appellate counsel's decision to not pursue a meritless claim in favor of more persuasive arguments does not constitute error under *Strickland*.

## Alleged Trial Errors (Grounds 2, 6, 7)

Fowler alleges a Fifth Amendment violation occurred during the government's opening argument and when Fed. R. Crim. P. 404(b) testimony detailing the circumstances leading to his firearm possession was explored. Ground 2, D-cv-1 at 5, D-cv-2 at 13-16, D-cv-2 at 68 (Issue 4). Fowler also relies on *Old Chief v. United States*, 519 U.S. 172 (1997) as support for his contention that his prior statements at his state court trial admitting to having possession of the firearm should not include any reference to the murder in his

federal trial. D-cv-2 at 15.

Fowler does not support his argument with any relevant authority or credible evidence that the government's opening statement and the admission of certain evidence under Rule 404(b) was flawed and should have been challenged on appeal. Ground 6, D-cv-2 at 68, Ground 7, D-cv-2 at 33, 35 (Issue 3). Fowler's appellate counsel was not constitutionally ineffective for failing to argue any of these issues and Fowler does not provide this Court with argument or authority to conclude otherwise.

Fowler claims his appellate counsel should have raised his double jeopardy and evidentiary arguments on appeal. Appellate counsel was not constitutionally ineffective for failing to raise these issues and Fowler points to no specific arguments counsel should have raised on his behalf that would have successfully challenged his convictions on appeal by undermining this Court's evidentiary rulings or otherwise challenging the sufficiency of the evidence. Rule 404(b) addresses evidence of other crimes, wrongs, or acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See Fed. R. Evid. 404(b); *see generally United States v. Baker*, 432 F.3d 1189, 1204 (11th Cir. 2005).

"Rule 404(b) is a rule of inclusion." *Baker,* 432 F.3d at 1204-05. To be admissible, (1) the evidence must be relevant to an issue other than the defendant's character; (2) the "other" act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; and (3) the probative value of the evidence must not be substantially outweighed by its undue prejudice and the evidence must meet the other requirements of Rule 403. *United States v. Matthews*, 431 F.3d 1296, 1310-11 (11th Cir. 2005). In addition, in *Dowling v. United States*, 493 U.S. 342 (1990), the Supreme Court

held that double jeopardy collateral estoppel does not prevent the United States from using evidence of a defendant's previous crime, for which he had been tried and acquitted, as evidence of intent under Fed. R. Evid. 404(b).

Prior to trial, Fowler's counsel, in a motion in limine, had attempted to exclude certain evidence relating to the state court proceedings. D-55. This Court heard argument and made rulings on the motion prior to selecting the jury. D-125 at 5-19. This Court ensured that no one would refer to the state court conviction or that the conviction had been subsequently vacated but gave Fowler warnings on how his cross examinations of the government's witnesses or his own testimony would affect the ruling.[7] Id. at 8-9, 18-19. The parties would stipulate to Fowler's prior convictions. Id. at 6. In instructing the jury, this Court told them that the arguments of counsel were not evidence and they could consider only the admitted exhibits and trial testimony in their deliberations. Id. at 244; D-165 at 87-88. In explaining the elements of Fowler's firearm possession charge, the government briefly mentioned that the firearm had been used during a murder but no mention of Fowler's murder conviction or subsequent state appeals court reversal.[8] D-125 at 245.

Out of the presence of the jury, this Court heard argument on the admissibility of Fowler's pre-*Miranda* silence and Fowler's objection to the government's line of inquiry in presenting their case. D-125 at 306-09, 343-44, D- 126 at 6-13. However, Fowler had

---

[7] At the conclusion of the trial, based on the trial record and the stipulations, this Court denied the motion in limine as moot. D- 165 at 69.

[8] In opening statement, a prosecutor must take care to refer only to evidence which he or she has a basis for believing will be introduced at trial. *United States v. Chirinos*, 112 F.3d 1089, 1098-99 (11th Cir. 1997) (not improper for prosecutor to refer to 404(b) evidence in opening prior to trial court ruling on its admissibility where prosecutor had a reasonable belief that the district court would admit the evidence).

already put self-defense at issue in the trial by his opening statement and by his request

for the inclusion of duress and coercion instructions in the jury instructions. D-125 at 252-

65, D-126 at 12-13. In overruling the objection, this Court noted "the government must deal

with in proper presentation of their case." D-126 at 13. ATF Special Agent Dan O'Kelly's

testimony detailed how Fowler's firearm and ammunition possession met the interstate

commerce element of the charges. Id. at 282-86. Fowler did stipulate to being "a convicted

felon" and that he "was so on July 22, 2003, and had not had his right to possess a firearm

or ammunition restored." Id. at 255-56. Fowler took the stand in his own defense, explaining

his version of events leading to his firearm possession charges and his three prior felony

convictions. D-127 at 169-229. Fowler admitted he was a three-time convicted felon and

explained how he grabbed the firearm while struggling with Dunbar, shot him, and later hid

the bullets, mask, and firearm. Id. at 208-12, 217-20, 222-23. Fowler's counsel objected to

the scope of the government's cross-examination of his prior convictions; this Court

overruled the objections, ruling that the government's line of questioning was pertinent to

assessing Fowler's memory and credibility. Id. at 233-35, 238.

Fowler's counsel objected to another line of questioning that she believed came

close to commenting on Fowler's post-*Miranda* silence and moved for a mistrial. Id. at 288-

93. This Court overruled the objection after delineating the parameters of the questioning,

denying the motion for mistrial, and allowing the defense request for the duress and

coercion jury instructions. Id. at 293-95. In renewing the request for a motion for judgment

of acquittal, Fowler's counsel relied on their previous arguments and motions. D-165 at 70-

71. The jury's verdict was guilty as to both counts. D-128 at 15-19, D-99.

After trial, Fowler asked for new counsel and for additional time to file a motion for

new trial. D-103, D-104. His trial counsel moved to withdraw representation. D-106. Fowler's motion for judgment of acquittal or new trial was stricken. D-109. This Court appointed another attorney, D-112, who reviewed the entire trial transcript and filed a motion for new trial focusing on essentially the same double jeopardy and Rule 404(b) arguments Fowler raises here. D-132. Based on the government's response and the trial record, this Court found Fowler's arguments unpersuasive. D-134, D-135. On appeal, Fowler was represented by yet another lawyer. D-143, D-146.

The events of July 22, 2003, that led Fowler to murder Samuel Dunbar were the same events causing him to be a felon in possession of a firearm and subject to federal prosecution. Dunbar's murder was inextricably intertwined with the evidence regarding the charged offense because it formed an "integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989). Accordingly, this evidence was not inadmissible character evidence but explained the context and motive of the crime, is "linked in time and circumstances with the charged crime," and "forms an integral and natural part of an account of the crime." *See United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). Fowler's contention, that admission of the challenged evidence was unduly prejudicial is unpersuasive. The determination of unfair prejudice "lies within the sound discretion of the district judge and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *United States v. Jernigan*, 341 F.3d 1273, 1282 (11th Cir. 2003) (citations and internal quotation marks omitted).

Furthermore, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. For evidence to be unfairly prejudicial, it generally must involve an emotional appeal that would sway the jury to convict the defendant based on a ground other than a fair consideration of guilt or innocence. Id. Furthermore, Rule 403 is an extraordinary remedy that should be used only sparingly, and the balance should be struck in favor of admissibility.

Thus, in reviewing issues under Rule 403, this Court "look[s] at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (citations, internal quotation marks, and internal marks omitted). Whereas "[t]he district court possesses broad discretion to admit evidence if it has any tendency to prove or disprove a fact in issue . . . the court's discretion to exclude evidence under Rule 403 is narrowly circumscribed." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006). The evidence that Fowler challenges was properly admitted, did not violate Rule 404(b), and was not unduly prejudicial under Rule 403. Similarly, the government's opening statement was not unduly prejudicial and did not affect Fowler's substantial rights.[9]

---

[9] Even if Fowler could show prejudice from the prosecutor's comments which he has not done here, this Court instructed the jury that what the attorneys say during opening and closing arguments is not evidence in the case. It can be presumed that the jury followed this Court's cautionary instructions. *See United States v. Stone*, 9 F.3d 934, 937-38 (11th Cir. 1993). This Court's cautionary instructions would have cured any perceived prejudice from the prosecutor's comments. *See United States v. Obregon*, 893 F.2d 1307, 1311 (11th Cir. 1990); *United States v. Sawyer*, 799 F.2d 1494, 1507 (11th Cir. 1986); *United States v. Cole*, 755 F.2d 748, 769 (11th Cir. 1985).

Because Fowler fails to demonstrate any error from this Court's evidentiary rulings nor has he shown the government's opening statement affected his substantial rights, he certainly has failed to establish that his appellate counsel should have raised these arguments on appeal and that had he done so, the outcome of his case would have been different.

**Sentencing Claims (Grounds 3, 4, and 7)**

In Ground 3, Fowler contends his sentencing enhancement pursuant to USSG §2A1.2 violates his Sixth Amendment right and the holding of *United States v. Booker*, 543 U.S. 220 (2005) and his appellate counsel was constitutionally ineffective for failing to raise this issue on appeal. Ground 3, D-cv-2 at 17-18, 68 (Issue 3)), Ground 7, D-cv-2 at 33-34 (Issue (1)), D-cv-2 at 68 (Issue 3). Fowler further argues that the enhancement was objected to pursuant to *Apprendi v. New jersey*, 530 U.S. 466 (2000) at sentencing.  PSR Addendum at  ¶ 4, D-150 at 10, 12, D-150 at 10.   Fowler contends he is entitled to relief because the "finding that petitioner committed murder" is based on facts not found by the jury.  D-cv-2 at 17.   Fowler alleges his indictment for a 18 U.S.C. § 922(g) offense, unlike an offense under § 924(c) was "broadened" because he "was accused of murder by the government and then the Court when it applied the homicide provision of 2A1.1 against [him] at sentencing." Ground 4, D-cv-1 at 8, D-cv-2 at 19-24, 67-68 (Ground 1). Consequently, Fowler claims he is entitled to relief amounting to a concurrent sentence pursuant to USSG §5G1.2 and his appellate counsel was ineffective in not so arguing on appeal.  He is wrong. Fowler's *Apprendi* argument at sentencing failed because his 240 months sentence did not exceed the statutory maximum to which both firearms' convictions

exposed him. PSR ¶ 76, D-150 at 10, 13.[10]  Although Fowler made an objection to the use

of USSG §2A1.2 to determine his base offense level, this Court held that the government

had proven "by a preponderance of the evidence that [Fowler] committed the offense of

second degree murder." D-150 at 12-13. As the Eleventh Circuit noted, the application of

the cross-referenced §2K2.1(c)(1)(B) with §2A1.2 was appropriate because it was "[t]he

most analogous offense." *Fowler*, 342 Fed. App'x at 524. The base offense level

determination did not broaden the indictment or the elements of the offenses as Fowler

suggests.

In reviewing Fowler's sentence determination, the Eleventh Circuit held:

> While we conclude from the record that the district court erred in grouping the counts of Fowler's conviction under § 3D1.1 because § 3D1.1 excludes § 2A1.2 from grouping, Fowler cannot carry his burden of showing that the district court's error affected his substantial rights because the application of § 3D1.1 had no affect on Fowler's guidelines imprisonment range, his statutory maximum sentences, or the district court's application of § 5G1.2(2), which called for the statutory maximum sentences on Fowler's two counts of conviction to run consecutively to the full extent of both sentences. Id.

---

[10]  Even assuming *arguendo* appellate counsel had raised this argument, Fowler would not have prevailed on direct review. The Eleventh Circuit, in reviewing the computation of his guidelines sentence, noted the "applicable 240-month statutory maximum." *Fowler*, 342 Fed. App'x at 522. *Apprendi* addresses only facts that increase a statutory maximum. Fowler's indictment fully complied with *Apprendi* because it included any and all facts that affected the statutory maximum applicable to  Fowler. D-150 at 32-33. Accordingly, there was no basis for appellate counsel to have raised an *Apprendi* argument on appeal. The Eleventh Circuit has held that *Apprendi* did not apply to judge-made determinations pursuant to the Federal Sentencing Guidelines. *See, e.g., United States v. Nealy*, 232 F.3d 825, 829 n.3 (11th Cir. 2000) ("The Sentencing Guidelines are not subject to the Apprendi rule."); *United States v. Harris*, 244 F.3d 828, 829-30 (11th Cir. 2001) (holding that *Apprendi* does not apply to the relevant conduct provision of the Sentencing Guidelines); *see also United States v. Diaz*, 248 F.3d 1065, 1105 (11th Cir. 2001) (noting that "Sentencing Guideline issues are not subject to the *Apprendi* rule and, thus, there is no requirement that sentencing facts be submitted to a jury and found beyond a reasonable doubt").

Even if appellate counsel had broadened his arguments to include all Fowler's current misapprehensions concerning his guidelines determination and made an *Apprendi* claim, such arguments would have been unsuccessful on appeal because his 240-month sentence did not exceed the statutory maximum. Fowler's appellate counsel was not constitutionally ineffective for failing to bring frivolous or nonmeritorious arguments. In fact, the Sixth Amendment does not even require appellate advocates to raise every non-frivolous issue. Fowler's sentencing grounds have no merit.

**Other Claims Involving Appellate Advocacy (Ground 7)**

Fowler asserts that appellate counsel erred by "conceding that the Full Faith and Credit Issue he raised on direct appeal had no application to criminal proceedings. D-cv-2 at 33, 35-36 (Issue 4). Fowler fails to develop this argument other than as general statement contending his argument was based on "comity and federalism." Id. at 35. In the opinion, the Eleventh Circuit does state that a concession was made. *Fowler*, 342 Fed. App'x at 525. However, a fair reading of Fowler's briefs does not support that statement. See Exhibit A and C to Doc. 10. No such concession was made and Fowler cannot demonstrate prejudice on the basis he suggests. Moreover, even if counsel had made such a concession it could be reasonably viewed as a strategic decision and within the parameters of effective appellate advocacy.

More importantly, the 240-month sentence this Court imposed did not violate the Full Faith and Credit Act and, consequently, was not substantively unreasonable. The Full Faith and Credit Act obligates federal courts to give effect to the judgments of state courts. 28 U.S.C. § 1738. The Act, however, does not apply to a district court's consideration of a defendant's previous criminal conduct for purposes of determining a federal sentence,

regardless of whether that conduct already has been the subject of a state court proceeding. *See United States v. Fazande*, 487 F.3d 307, 308-09 (5th Cir. 2007) ("the principles that underlie the Full Faith and Credit Act are simply not implicated when a federal court endeavors to determine how a particular state criminal proceeding is to be treated, as a matter of federal law, for the purpose of sentencing the defendant for a distinct and unrelated federal crime"); *United States v. Guthrie*, 931 F.2d 564, 571 (9th Cir. 1991) ("[D]octrines such as Full Faith and Credit, ... and related jurisdictional principles, are inapplicable ... where the issue is the role of prior state convictions in a federal sentencing scheme."). Under those circumstances, the principles of federalism and comity embodied in the Full Faith and Credit Act are not endangered because the federal court, examining the defendant's prior conduct under a preponderance-of-the-evidence standard, is not refusing to recognize the validity of the state court judgment. *Cf. United States v. Jones*, 415 F.3d 256, 265 (2d Cir. 2005) (not Full Faith and Credit Act violation for sentencing court to use defendant's prior youthful offender adjudications even if state could have precluded their use). Because Fowler cannot demonstrate cause or prejudice and his claim is without merit, he is entitled to no relief on this ground.

Next, Fowler asserts further that appellate counsel "was ineffective for failing to challenge petitioner's conviction on direct appeal." D-cv-2 at 33, 36-37 (Issue 5). As support for this ground, Fowler refers to his letter to counsel addressing his request to counsel about raising an additional four issues involving double jeopardy, evidentiary, and sentencing issues. Id. at 66-69. Fowler claims without any supporting documentation that "[c]ounsel assured [him] that these issues were legitimate and [counsel] would address them on direct appeal." Id. at 37. Other than Fowler's conclusory statements, there is no

indication in the record or based on any authority Fowler cites throughout his motion, none of these arguments would have been successful on appeal. Appellate counsel would not have prevailed on these arguments in the manner Fowler suggests, and nonmeritorious claims that are not raised on appeal do not constitute ineffective assistance of counsel. Indeed, as the attached briefs demonstrate, see Exhibits A and C to Doc. 10, Fowler's appointed counsel provided him with highly professional assistance, raising reasonable issues. Fowler has failed to establish that appellate counsel's representation was deficient, or that he was prejudiced by defense counsel's representation. Therefore, these claims are without merit.

Fowler has not demonstrated that he suffered any violation of his constitutional rights as a result of any concession of an issue on appeal or the decision to not challenge his convictions. For the reasons previously explained, Fowler cannot establish that he was prejudiced because appellate counsel did not raise these claims on appeal. Accordingly, the claims he raises in Ground 7 are without merit.

Accordingly, the Court orders:

That Fowler's 28 U.S.C. § 2255 motion to vacate (Doc. cv-1; cr-162) is denied. The Clerk is directed to enter judgment against Fowler and to close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant

has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that the issues presented were adequate to deserve encouragement to proceed further, *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances. Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on September 29, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

A U S A :
Colleen D.
Murphy-Davis
Mark Fowler